LEON J. PAGE, COUNTY COUNSEL
NICOLE M. WALSH, SENIOR ASSISTANT (CA SBN 248222)
nicole.walsh@coco.ocgov.com
CAROLYN M. KHOUZAM, DEPUTY (CA SBN 272166)
carolyn.khouzam@coco.ocgov.com
333 West Santa Ana Boulevard, Suite 407
Santa Ana, California 9270
Telephone: (714) 834-3300
Facsimile: (714) 834-2359

Attorneys for Defendants BARRY RONDINELLA,
in his official capacity as Airport Director of
John Wayne Airport; and COUNTY OF ORANGE, CALIFORNIA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| DELUX PUBLIC CHARTER, LLC D/B/A JSX AIR and JETSUITEX, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ORANGE, CALIFORNIA, a charter county; BARRY RONDINELLA, in his official capacity as Airport Director of John Wayne Airport.<br><br>Defendants. | Case No. 8:20-cv-02344-JLS-KES<br><br>Assigned to the Honorable Josephine L. Staton<br><br>Magistrate Judge Honorable Karen E. Scott<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE [6]** |

//
//
//
//
//

-i-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   Defendants COUNTY OF ORANGE, CALIFORNIA and BARRY

2   RONDINELLA (collectively, "County"), respectfully submit the following Opposition to

3   Ex Parte Application for Temporary Restraining Order and an Order to Show Cause Why

4   Preliminary Injunction Should Not Issue [ECF 6] filed by Plaintiffs DELUX PUBLIC

5   CHARTER, LLC D/B/A JSX AIR and JETSUITEX, INC. (collectively, "JSX").  This

6   Opposition is based upon the attached Memorandum of Points and Authorities, the

7   Declarations of Barry Rondinella and William Borgsmiller, and the files and records in

8   this matter.

9   Respectfully submitted,

10   LEON J. PAGE, COUNTY COUNSEL
     NICOLE M. WALSH, SENIOR ASSISTANT
11   CAROLYN M. KHOUZAM, DEPUTY

12   DATED:  December 17, 2020   By: _____/S/_____
13                                  Nicole M. Walsh, Senior Assistant

14   Attorneys for Defendants
     BARRY RONDINELLA, in his official capacity as
15   Airport Director of John Wayne Airport; and
     COUNTY OF ORANGE, CALIFORNIA
16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-ii-

# TABLE OF CONTENTS

Page No.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE ……………….………………..…..i

TABLE OF CONTENTS………………………………………………....iii

TABLE OF AUTHORITIES ………………………………………….....iv

MEMORANDUM OF POINTS AND AUTHORITIES...……………………......1

I.      INTRODUCTION .................................................................1

II.     FACTUAL BACKGROUND ..................................................3

III.    FAA GRANT ASSURANCES................................................6

IV.     STANDARD OF REVIEW ....................................................6

V.      ARGUMENT .......................................................................8

        A.  Plaintiffs Cannot Demonstrate They Are Likely to Prevail on the Merits of Their Claims ..........................................8

            1.  The County Did Not Impose A "Restriction" on Airport Users in Violation of ANCA .......................................9

            2.  The Lease Provision is Not Preempted by the ADA ..............................12

            3.  The Lease Provision is Not Discriminatory .............................13

        B.  Plaintiffs Have Not Demonstrated that a Temporary Restraining Order is Necessary to Prevent Irreparable Harm......................15

        C.  Equities Do Not Favor Plaintiffs and an Injunction is Not in the Public Interest.........................................17

        D.  The Bond Requirement Should Not Be Waived ...........................18

VI.     CONCLUSION...................................................................18

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*3570 East Foothill Blvd., Inc. v. City of Pasadena*,
  912 F.Supp. 1257 (C.D. Cal. 1995) ...................................................................7

*Arapahoe County Public Airport Auth. v. FAA*,
  242 F.3d 1213 (10th Cir. 2001) .................................................................12, 13

*Baca v. Moreno Valley Unified School District*,
  936 F.Supp. 719 (C.D. Cal. 1996) ...................................................................7

*Beaty v. Brewer*,
  649 F.3d 1071 (9th Cir. 2011) ...........................................................................7

*Big Sky Scientific LLC v. Idaho State Police*,
  2019 WL 438336 (D.Idaho Feb. 2, 2019) .......................................................7

*Bronco Wine Co. v U.S. Dept. of Treasury*,
  997 F.Supp. 1209 (E.D. Cal. 1996) .................................................................7

*Caplan v. Fulheimer Eichen Braverman & Kaskey*,
  68 F.3d 828 (3d Cir. 1995) .............................................................................15

*Engquist v. Oregon Department of Agric.*,
  553 U.S. 591 (2008)........................................................................................13

*Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*,
  841 F.3d 133 (2d Cir. 2016) ...........................................................................12

*Garcia v. Google*,
  786 F.3d 733 (9th Cir. 2015) ..........................................................................15

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  607 F.3d 453 (7th Cir. 2010) ..........................................................................18

*In Defense of Animals v. U.S. Dept. of Interior*,
  737 F.Supp.2d 1125 (E.D. Cal. 2010) .............................................................7

*Klein v. City of Laguna Beach*,
  594 F.Supp.2d 1020 (C.D. Cal. 2009) .............................................................6

*Knudsen Corp. v. Ever-Fresh Foods, Inc.*,
  336 F.Supp. 241 (C.D. Cal. 1971)....................................................................7

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …

# TABLE OF AUTHORITIES (continued)

Page No.

**Cases (continued)**

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*,
    887 F.Supp. 1320 (N.D. Cal. 1995).........................................................................7

*Ohio Casualty Ins. Co. v. L.H. Engineering Co., Inc.*,
    2014 WL 12569352 (C.D.Ca. April 24, 2014).......................................................7

*Salt Lake Tribune Publishing Co., LLC v. AT&T Corp.*,
    320 F.3d 1081 (10th Cir. 2003)...........................................................................15

*Save Our Sonoran, Inc. v. Flowers*,
    408 F.3d 1113 (9th Cir. 2005) ...........................................................................18

**Statutes**

49 U.S.C. § 47524(c)(1)..............................................................................................9

**Rules**

Fed. R. Civ. P. 65(c)..................................................................................................18

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-v-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants County of Orange and Barry Rondinella (collectively, "County") have not taken unlawful, discriminatory, or federally preempted action against Plaintiffs Delux Public Charter, LLC D/B/A JSX Air and JetSuiteX, Inc. ("JSX" or "Plaintiffs").  The County has not promulgated any rule, ordinance, or regulation in violation of the Airport Noise and Capacity Act of 1990 ("ANCA"), the Airline Deregulation Act ("ADA"), or any other federal law.  In fact, the County has not taken *any action* regulating or restricting JSX.  Rather, JSX has been unable to find a Fixed Based Operator ("FBO") willing to host its regularly scheduled charter operations.

However, what federal aviation law <u>does</u> require of an airport sponsor, such as the County, is *non-discrimination*, and JSX simply objects to being treated the same way as all other commercial carriers at JWA.  JSX wants what the County, as an airport sponsor, cannot provide, i.e., an exclusive right to operate out of an FBO facility – and outside of the Security Identification Display Area (SIDA) – a privilege and business advantage that is afforded to no other commercial carrier.

In fact, the County has <u>repeatedly</u> offered JSX the same opportunity as all other commercial carriers, e.g., Southwest Airlines, United Airlines, Spirit Airlines, Inc. and Allegiant Air LLC, etc. to operate out of the Thomas F. Riley Terminal ("Terminal") at John Wayne Airport ("JWA").  But that is not good enough for JSX.  The access that JSX wants – but has no enforceable right against the County to obtain – requires a County FBO tenant willing to serve as its landlord, and that is what JSX does not have.

JSX's current FBO landlord, Aviation Consultants, Inc. d/b/a ACI Jet ("ACI Jet"), currently operates at JWA pursuant to an expired interim lease.  In response to the County's Request for Proposals ("RFP"), ACI Jet made the business decision to <u>exclude</u> hosting regularly scheduled charter operations (such as those offered by JSX) on its FBO premises.  The County's RFP did not include a requirement that respondent FBOs had to restrict or prohibit regularly scheduled charter operations in their proposals to be awarded

-1-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

a lease.  The long-term lease that ACI Jet subsequently executed, which becomes operative January 1, 2021, simply mirrors ACI Jet's proposal and memorializes its business decision to not host regularly scheduled charter operations.  Significantly, ACI Jet is not challenging the validity of its long-term lease with the County.  ACI Jet is not a party to this lawsuit.

In accordance with its lease proposal and corresponding lease terms, ACI Jet tendered a Notice of Termination to JSX.  Brazenly expecting this District Court to do its bidding, JSX has continued to sell tickets to the public, even though it has no legally protected right to continue operating out of ACI Jet's facilities.  This Court should not encourage such continued self-inflicted harm.

Though operating out of the Terminal is not JSX's preferred access, it is legally sufficient access that the airport sponsor can provide, nonetheless.  And it is non-discriminatory.  JSX's strawmen – Spirit Airlines, Inc. and Allegiant Air LLC – operate out of this same commercial terminal and set their own routes.  The County has not granted these or any other commercial carriers an exclusive right to operate out of an FBO – as only an FBO tenant can grant that right.

In its moving papers, JSX fails to cite <u>any</u> legal authority holding that proposals by tenants of the County, based on that tenant's business decisions, are tantamount to mandatory regulations of the County imposed on airport users.  Contrary to JSX's assertions, federal aviation law does not require airport sponsors, such as the County, to grant every prospective airport user its "perfect" or "preferred" access.  To the contrary, Federal Aviation Administration ("FAA") grant assurances prohibit an airport sponsor from granting the kind of preferential treatment or "exclusive rights" that JSX is now seeking.  Because there is no legal authority that supports enjoining the County from honoring ACI Jet's desire not to host regularly scheduled charter operations out of their FBO, and because the County has treated JSX fairly and in line with other carriers, the *ex parte* application for TRO must be denied and an order to show cause regarding a preliminary injunction should not issue.

## II.   FACTUAL BACKGROUND

In 2015, JWA began evaluating and planning for the future needs of the general aviation community at JWA through creation of a comprehensive General Aviation Improvement Program ("GAIP"). See Declaration of Barry Rondinella ("Rondinella Decl.") at ¶ 3.   On June 25, 2019, the Board certified Final GAIP Program EIR 627 ("EIR 627") and approved the project ("Project"). *Id*. The Project contemplated two full service FBOs (East and West) and one limited service FBO as part of JWA's plan to provide for and service general aviation. *Id*. at ¶ 3.

FBOs are private aircraft terminals that are granted the right by the County to operate at JWA. Rondinella Decl. at ¶ 4. FBOs typically provide aeronautical services such as aircraft charter operations, fueling, cleaning, aircraft maintenance and repair, aircraft sales, aircraft storage (hangars and tie-downs), ground transportation and parking, flight schools, management of transient aircraft parking, and other authorized uses in accordance with the terms and conditions of their leases. *Id*. The FBO usually offers a lounge for passengers departing and arriving on private general aviation flights at an airport.  Fueling is a primary source of revenue. *Id*.

In April 2017, ACI Jet executed a short-term interim FBO lease ("Interim Lease") with the County at JWA.  Since expiration of the Interim Lease, ACI Jet has continued to lease space at JWA as a month-to-month holdover. *See* County Declaration of William Borgsmiller ("Borgsmiller Decl.") at ¶ 2; Rondinella Decl. at ¶ 5.  The Interim Lease was silent on whether ACI Jet could sublease to a regularly scheduled charter service, such as JSX. *Id*. at ¶ 3.

During the term of the Interim Lease, JSX requested to operate a regularly scheduled commercial charter from ACI Jet's FBO leasehold. Rondinella Decl. at ¶ 5. While regularly scheduled charter operations at JWA had never occurred at an FBO leasehold at JWA, Airport Director Barry Rondinella exercised the discretion granted to the Airport Director pursuant to Section 8.1.7(b) of the Phase 2 Commercial Airline Access Plan and Regulation ("Phase 2 Access Plan") and approved JSX's request to

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    operate from ACI Jet's leasehold.  *Id*.  The sublease between ACI Jet and JSX stated that

2    the agreement was "subject and subordinate to the Master Lease and will automatically

3    terminate on the expiration or termination of the Master Lease." Borgsmiller Decl. at ¶ 4.

4         Implementing the 1985 Settlement Agreement between the County of Orange, the

5    City of Newport Beach, the Airport Working Group (AWG) and Stop Polluting Our

6    Newport (SPON), the Phase 2 Access Plan at JWA places restrictions on operational

7    capacity, hours of operations, and noise levels at the County's ten (10) noise monitoring

8    stations.  General Aviation operations are permitted 24 hours daily subject to compliance

9    with the daytime noise limits and the more restrictive curfew noise limits, as documented

10   in the General Aviation Noise Ordinance ("GANO"). *Id*. at ¶ 12.  Section 8.1.7(b) of the

11   Access Plan provides as follows:

> Any *Qualified Commuter Carrier* may apply to the *Airport Director*, in
> writing, for permission to conduct passenger or related operations at the
> location of a Fixed Base Operator ("FBO") which is a tenant of the *County*.
> The application shall provide such information as may be required or
> requested by the *Airport Director*. If the *Airport Director* or the *Board of
> Supervisors* authorizes *Commuter Carrier* operations at a FBO location, the
> authority of the applicant to conduct such operations shall be subject to such
> conditions as the *Airport Director* or the *Board* may impose on such
> operations. (*Id*. ¶ 13.)

18   Thus, a request by a Qualified Commuter Carrier is only submitted to the Airport

19   Director if an FBO tenant is willing to sublease to that carrier.

20        In September 2019, the County Board of Supervisors ("Board") authorized

21   issuance of a Request for Proposals ("RFP") for FBOs to submit responses to become

22   long-term leaseholders and upgrade facilities as part of the GAIP. *Id.* at ¶ 6. The County

23   did not require the FBO bidders to exclude regularly scheduled charter operations such as

24   JSX.  *Id*.; Borgsmiller Decl. at ¶ 7.  All but one of the proposals submitted by responding

25   FBOs specifically stated that they did not plan to sublease to regularly scheduled charter

26   service providers (*e.g.,* JSX).  *Id*.  In the Experience and Background section of

27   "Respondent's Questionnaire" in its proposal, ACI Jet indicated in their answer to

28

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …

1    Question 3, which asked whether their proposal included plans for a regularly scheduled

2    charter operation, a response of "no". *Id*., Borgsmiller Decl. at ¶ 9. [1]

3           Pursuant to the rules set forth in the competitive RFP, JWA staff had no

4    discussions with ACI Jet personnel or any other FBO proposer regarding the RFP during

5    the proposal period, other than an official question and answer period which was

6    available to and viewable by all proposers. Rondinella Decl. at ¶ 14. Proposers do not

7    need to give reasons for their own business decisions. *Id*.

8           On August 11, 2020, the Board considered the submitted proposals and directed

9    JWA staff to finalize leases with Clay Lacy Aviation, Inc. for the Northwest Full-Service

10   FBO, with ACI Jet for the Northeast Full-Service FBO, and with Jay's Aircraft

11   Maintenance, Inc. for the Southwest Limited-Service FBO. Rondinella Decl. at ¶ 15.  On

12   September 15, 2020, the Board approved leases for the two Full-Service FBOs, reflecting

13   35-year terms commencing on January 1, 2021. *Id*.  The terms of ACI Jet's lease

14   corresponded to ACI Jet's proposal and ACI Jet voluntarily executed the agreement. *Id*.;

15   Borgsmiller Decl. at ¶ 9.  Due to ACI Jet indicating that it would not lease to any

16   regularly scheduled commuter carrier, the County revised the lease terms to indicate that

17   ACI Jet would not host such an operator. Rondinella Decl. at ¶ 10.

18          ACI Jet's current Interim Lease with the County expires on December 31, 2020.

19   Borgsmiller Decl. at ¶ 10. On November 16, 2020, ACI Jet sent JSX a Notice of

20   Termination of JSX's month-to-month sublease with ACI Jet effective December 31,

21   2020. *Id*. at ¶ 11. ACI Jet does not have plans to seek a lease amendment from the County

22   to allow for regularly scheduled charter operations. *Id*. at ¶ 12.

23          The Airport Director has evaluated potential access accommodations for JSX and

24   offered JSX the accommodation of operating out of the Terminal. Rondinella Decl. at

25   ¶17.  JSX has been granted access to the Terminal in the past. *Id*. at ¶¶ 5, 16.

26

27   [1] Following receipt of initial responses, JWA staff released an addendum to the RFP that

28   led to JSX redlining its questionnaire as it related to whether they planned to sublease to
     regularly scheduled charter service providers. Rondinella Decl. at ¶ 8.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-5-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   JSX has an additional option.  The County's lease with FBO Martin Aviation, L.P.

2   ("Martin Aviation") does not contain a provision regarding regularly scheduled charter

3   operations.  If Martin Aviation is willing to sublease to JSX or a similar operation, the

4   Airport Director would approach the request with an open mind as to whether to exercise

5   his discretion under Section 8.1.7(b) of the Phase 2 Access Plan. Rondinella Decl. at ¶

6   11.

7   **III.   FAA GRANT ASSURANCES**

8   JWA does not operate in a vacuum.  As a recipient of FAA Grants, the County, as

9   a public agency airport sponsor, must provide certain Grant Assurances to the FAA.

10  (FAA Grant Assurances are available on the FAA website,

11  https://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip-

12  2020.pdf)  Grant assurances are the obligations airport owners or sponsors, planning

13  agencies, and other organizations agree to when they accept Airport Improvement

14  Program grants or other FAA-administered airport financial assistance.

15  In conjunction with federal aviation law, the FAA Grant Assurances provide a

16  legal framework for the County's management of airport operations.  Particularly

17  relevant to this action are Grant Assurance no. 22 (Economic Nondiscrimination) and no.

18  23 (Exclusive Rights).  In pertinent part, Grant Assurance no. 22 provides that an airport

19  sponsor shall "make the airport available as an airport for public use on reasonable terms

20  and without unjust discrimination to all types, kinds and classes of aeronautical activities,

21  including commercial aeronautical activities offering services to the public at the airport."

22  Similarly, Grant Assurance no. 23 provides, in pertinent part, that an airport sponsor "will

23  permit no exclusive right for the use of the airport by any person providing, or intending

24  to provide, aeronautical services to the public."

25  **IV.   STANDARD OF REVIEW**

26  "A temporary restraining order is an extraordinary and drastic remedy and should

27  not be granted unless the movant, by a clear showing, carries the burden of persuasion."

28  *Klein v. City of Laguna Beach*, 594 F.Supp.2d 1020, 1024 (C.D. Cal. 2009); *see also In*

-6-

*Defense of Animals v. U.S. Dept. of Interior*, 737 F.Supp.2d 1125, 1131 (E.D. Cal. 2010) ("The issuance of . . . preliminary injunctive relief is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy by clear and convincing evidence.")  Plaintiffs' burden is even weightier here because the purpose of a temporary restraining order is to preserve the status quo (*Bronco Wine Co. v U.S. Dept. of Treasury*, 997 F.Supp. 1209, 1231 (E.D. Cal. 1996)), while Plaintiffs seek to drastically alter it.  *See, 3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1257, 1260 (C.D. Cal. 1995) (since primary purpose of preliminary injunction is to preserve the status quo, those which change it are, "'viewed with hesitancy and carry a heavy burden of persuasion.")

To obtain a temporary restraining order, the moving party must demonstrate (1) that it is likely to prevail on the merits of its claim, (2) that it will suffer irreparable harm in the absence of extraordinary relief, (3) that the balance of equities is in its favor, and (4) that an injunction is in the public interest. *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (preliminary injunction); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995) (standards for TRO are same as for preliminary injunction). As the moving parties, Plaintiffs have the burden of proof on each element.  *Baca v. Moreno Valley Unified School District*, 936 F.Supp. 719, 726 (C.D. Cal. 1996) (preliminary injunction); *Big Sky Scientific LLC v. Idaho State Police*, 2019 WL 438336 at *4 (D.Idaho Feb. 2, 2019) (burden of proof for TRO is same as for preliminary injunction).

Plaintiffs fall far short of this standard. *Ohio Casualty Ins. Co. v. L.H. Engineering Co., Inc.*, 2014 WL 12569352 at *2 (C.D.Ca. April 24, 2014) (denying TRO "on the basis of unproven and contradicted facts); *Knudsen Corp. v. Ever-Fresh Foods, Inc.*, 336 F.Supp. 241, 248 (C.D. Cal. 1971) (denying preliminary injunction; "The case at bar presents material disputed issues of fact which casts reasonable doubt upon the certainty of plaintiff's prevailing at a trial on the merits.").

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# V.   ARGUMENT

## A. Plaintiffs Cannot Demonstrate They Are Likely to Prevail on the Merits of Their Claims

Plaintiffs are not likely to prevail on the merits because their entire complaint is aimed at the wrong target.  The County did not adopt any rule or regulation to prevent JSX from operating at JWA. Nor did the County unilaterally demand that ACI Jet terminate its lease with JSX.  To the contrary, the so-called "Restriction" that is at the center of JSX's complaint was not imposed by the County.  Rather, the County's lease terms mirror ACI Jet's proposal and its representation that it no longer wished to serve JSX or any other regularly scheduled charter operation. The County has no power to require FBOs like ACI Jet to service or rent space to any particular subtenant. That is not how the contractual arrangements at the airport are structured.  The County enters leases with its FBO tenants, who in turn may, if they wish, enter subleases with subtenants, such as JSX. But the County, as the airport sponsor, cannot offer to JSX what the FBO – here, ACI Jet – is not willing to provide.

It was ACI Jet, not the County, that determined it no longer wished to rent space to JSX. Thus, the County did not violate ANCA or ADA. In fact, the County's actions here do not implicate either statute or the federal preemption doctrine on which they are based. Nor did the County infringe on JSX's rights under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. In short, it is not the County's job or responsibility to nurture, supervise, or referee the contractual relationships between FBOs and their subtenants, so long as those subtenants comply with the rules of the airport generally. The County does not object to JSX at the airport, but the County cannot grant JSX preferential treatment or an exclusive right to operate and it cannot force an FBO – whether it be ACI Jet or any other – to accept JSX as a subtenant.

//

//

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

### 1. The County Did Not Impose A "Restriction" on Airport Users in Violation of ANCA

The County did not violate ANCA by merely memorializing the wishes and proposal of the FBO in the lease – the County did not adopt any rule or restriction affecting JSX's access to JWA. 49 U.S.C. § 47524(c)(1).  It is this interposition of the FBO that makes this case different from those cited by JSX in its TRO Application.

The evidence shows that the County itself did not adopt any rule or restriction affecting JSX, its access to JWA, or its routes. See, 49 U.S.C. § 47524(c)(1).  The facts demonstrate that, until ACI Jet elected to terminate its arrangement with JSX, the County took no steps to restrict JSX's operations.  In fact, when Airport Director Barry Rondinella compiled the 2021 Plan Year Allocations under the Phase 2 Access Plan, he contacted JSX and asked for its passenger capacity allocations and how many Remain Overnight ("RON") spaces the commercial carrier would need in 2021.  JSX requested an allocation of 95,070 passengers and two (2) RON positions for its aircraft. The Airport Director then recommended to the County Board of Supervisors on November 3, 2020, that JSX be allotted the requested passenger capacity allocations and two RON positions. ECF 1: Compl. at ¶¶ 100-102.

At the time JSX received their 2021 Plan Year Allocations, JWA also granted new entrant access to Allegiant Air, Spirit Airlines, Sun Country, and Air Canada. Rondinella Decl. at ¶ 18.  Yet, the County was still actively taking steps to accommodate JSX and its operations, demonstrating that the County believed that airport could support all these carriers and more. *Id.*  The County's RFP for long-term FBO leases included no mandatory restriction or prohibition on regularly scheduled charter operations, such as those conducted by JSX.  Rondinella Decl. at ¶ 8.  The RFP simply asked if the prospective FBO anticipated subleasing to such air carriers.  *Id.*  Simply put, the County's RFP did not contain any restriction or regulation, nor did it require ACI Jet to alter the status quo as it related to JSX.

//

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

The problem is that ACI itself did not want to continue with the status quo.  ACI Jet indicated "no" next to Question 3, which asks whether ACI Jet planned to sublease to a regularly scheduled charter service. Borgsmiller Decl. at ¶ 9; Rondinella Decl. at ¶ 9. This remains the clearest expression of ACI Jet's intention to terminate its relationship with JSX, and the County had no authority to demand that ACI Jet continue servicing and renting space to JSX on a month-to-month basis.

Due to ACI Jet's decision not to lease to any regularly scheduled commuter carrier, the County revised the lease terms to include the so-called "Restriction" that JSX now challenges in this court. Borgsmiller Decl. at ¶ 10; Rondinella Decl. at ¶ 10.  The facts demonstrate that the County did not impose the "Restriction" on ACI Jet as a means of getting rid of JSX.  Instead, the facts simply show that the County's actions were driven by ACI Jet's preferences and prerogatives as an FBO, not by any desire to benefit Spirit Airlines and Allegiant Air or bring more concession dollars to the airport.

JSX seems to believe that the County is engaged in a sinister campaign to drive JSX out of JWA.  This is false, and the evidence proves it is false. The County has no problem with JSX or its business model; it understands that JSX is a public charter air service whose main selling point is that it operates outside of the Security Identification Display Area (SIDA) at JWA. In accordance with its obligations under FAA Grant Assurance no. 22, the County must "the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport."  The County further understands that JSX's aircraft are quiet and that JSX operates efficiently and safely and provides a service that some passengers prefer over those offered at larger airlines. Nevertheless, the County is under no legal obligation to find JSX an FBO leasehold at the airport where JSX can conduct its operations outside of the SIDA.  That is JSX's responsibility. Ultimately, the decision whether to lease to JSX is left to the FBOs using their business discretion, and no FBO

-10-

has come forward to request that JSX be included as a subtenant on any lease with the County.

For its part, the County has offered to let JSX operate out of the airport's standard SIDA facilities at the Terminal, as such an arrangement would not require FBO involvement. Rondinella Decl. at ¶ 17.  JSX has made it clear, however, that it will only accept a lease where it can operate according to non-SIDA procedures. Again, however, that is a business decision on the part of JSX, one that the County respects but is not required to accommodate by reconfiguring existing uses at the airport.

Plaintiff's TRO Application also suggests that the County is seeking to remove JSX from the airport to placate residents in Newport Beach. The evidence does not support such a contention. The Newport Beach residents who registered complaints about JSX incorrectly assumed that JSX would push the airport over the flight operations "cap" set forth in the Phase 2 Access Plan.  That is not the case, which is why the County did not object to ACI Jet leasing space to JSX in the first place.  It also explains why the statements and complaints from Newport Beach residents played no role in the County's decision to include the so-called "Restriction" in its lease with ACI Jet.  As stated above, the provision relating to regularly scheduled charter operations was added to the lease at ACI Jet's request.  If ACI Jet sought to terminate JSX as an overture to the residents of Newport Beach that would be an ACI Jet decision, not one made by the County.

Two additional points:  First, ACI Jet president and owner Bill Borgsmiller has not contacted the Airport Director to request that ACI's new lease be amended to accommodate JSX.  Rondinella Decl. at ¶ 16.  On the contrary, JSX has indicated that it has no intention of making such a request. Borgsmiller Decl. at ¶ 12. Second, of the four FBOs at John Wayne Airport, three – including ACI – have new leases with restrictions on regularly scheduled charter operations.  However, the fourth FBO, Martin Aviation, operates pursuant to a lease that does not expire until August 31, 2036.  Rondinella Decl. at ¶ 6. Martin Aviation's lease does not contain the same provision relating to regularly scheduled charter operations.  JSX could reach out to Martin Aviation and seek to move

-11-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

its non-SIDA operations to the Martin Aviation's leasehold.  Rondinella Decl. at ¶ 11. To the County's knowledge, since the Board award of the new FBO leases in September 2020, JSX has not contacted Martin Aviation for this purpose. *Id.*

JSX relies on a Second Circuit opinion, *Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133 (2d Cir. 2016), for its claim that the County enacted an access restriction against JSX in violation of ANCA. The *Town of E. Hampton* case, however, is easily distinguished. There, East Hampton **enacted new laws** to reduce aircraft related noise associated with the local airport, which the town owned and operated. Various users of the airport – mostly owners of private airplanes and helicopters – objected, claiming that the new laws, while intended to reduce noise impacts from Stage 2 aircraft, had the side-effect of substantially reducing their access to the airport.

By adopting noise measures, East Hampton failed to follow the procedures required under ANCA, resulting in a violation of federal law. *Id.* at 150-152, 155. In this case, the County did not enact any law, rule, or regulation subject to the ANCA procedures. As stated above, JSX and its operations do not create a noise problem for the airport and the County took no action against JSX – or any other carrier – to address noise issues. Instead, the County simply drafted a lease term that reflects the desire of ACI Jet to cease providing space and services to commercial carriers.  If JSX were to enter a lease with another FBO, such as Martin Aviation, the County would consider such an arrangement to determine if it could be accommodated. Rondinella Decl. at ¶ 11. The same is true if JSX wishes to forego its non-SIDA practices and move its operations to the Terminal.

### 2.  The Lease Provision is Not Preempted by the ADA

For its ADA claims, JSX relies heavily on the 10th Circuit decision in *Arapahoe County Public Airport Auth. v. FAA,* 242 F.3d 1213 (10th Cir. 2001). Like the *Town of E. Hampton* case, however, *Arapahoe* addresses a fact pattern fundamentally different from that involved in here. In *Arapahoe*, the county airport authority owned and operated a

-12-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   small airport (Centennial) just south of Denver, Colorado. *Id.* at 1216. The airport served

2   "unscheduled" commercial and cargo flights. An airline, however, expressed interest in

3   providing "scheduled" passenger service at the airport. *Id.* The county airport authority

4   opposed this plan and enacted a "moratorium" officially precluding scheduled passenger

5   service at the airport. *Id.* at 1216-1217.  The airline and the airport authority litigated the

6   matter in Colorado state court, culminating in a decision by the Colorado Supreme Court

7   in favor of the airport authority.  Independently, however, the FAA determined that the

8   moratorium on scheduled passenger flights violated the federal grant assurances governed

9   by the ADA. The litigation then switched to federal court, where both the district court

10  and circuit court ruled in favor of FAA on grounds that "the ban on scheduled passenger

11  service constitutes a state regulation of air carrier service and routes," and thus "is

12  permissible only if it constitutes an exercise of the Authority's proprietary power." *Id.* at

13  1222.

14       The dispute between JSX and the County is quite different. Obviously, the County

15  has not enacted a ban or moratorium on passenger service; Alaska, American, Delta,

16  Southwest, United, Frontier, and Spirit Airlines all continue to offer commercial flights

17  out of JWA.  Nor did the County attempt to interfere with JSX's ability to serve its

18  customers or maintain its current routes.  Instead, the County honored the decision of

19  ACI Jet to cease providing space and amenities to JSX. The County does not know what

20  drove ACI Jet's decision. The County certainly has no legal authority to demand that ACI

21  continue serving JSX at an economic loss. Simply put, this is not an ADA case, and there

22  has been no ADA violation.

23       ### 3.  The Lease Provision is Not Discriminatory

24       JSX's final claim – that the County violated the Equal Protection Clause of the

25  Fourteenth Amendment – likewise lacks merit. As stated in *Engquist v. Oregon*

26  *Department of Agric.*, 553 U.S. 591, 602 (2008), the Fourteenth Amendment "requires

27  that all persons subjected to . . . legislation be treated alike, under like circumstances and

28  conditions, both in the privileges conferred and in the liabilities imposed." According to

-13-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   JSX, the County violated the Fourteenth Amendment's Equal Protection Clause by

2   engaging in "political favoritism" designed to benefit JSX's competitors – Southwest

3   Airlines, Allegiant, and Spirit Airlines.  ECF 6-1: MPA in Support of TRO, p. 21.  As

4   with most of JSX's allegations, this one is bereft of evidence and appears constructed out

5   of wild speculation.  Contrary to what JSX may believe, there was no "quid-pro-quo

6   between the County and the airlines" according to which the County would ban JSX from

7   the airport "in exchange for the airlines offering routes and services at JWA." ECF 6-1:

8   MPA in Support of TRO, pp. 21-22.  Not true.

9       It is worth noting that none of the cases cited in "Equal Protection" portion of

10  JSX's brief involve airports, FBOs, or air carriers. None of them involve lease

11  agreements or lease terms, and none of them relates to business decisions and commercial

12  contracts. Contrary, to JSX's contentions, JSX was not singled out by a County ordinance

13  or regulation.  Nor did the County enact a broader policy designed to push JSX and any

14  similar operator off JWA. Instead, JSX is distressed due to its failure to negotiate an

15  acceptable subtenant agreement with its current FBO, ACI Jet.  That is not the County's

16  problem, and it certainly does not support an Equal Protection Clause claim against the

17  County.

18      JSX has a very particular business model – one that assumes access to a non-SIDA

19  facility for processing passengers and bypassing TSA checkpoints. This model requires

20  that an FBO agree to provide space and services for the non-SIDA facility.  This is

21  because (1) the Terminal does not include a non-SIDA facility, and (2) the Phase 2

22  Access Plan requires that commuter carriers wishing to operate outside the Terminal –

23  such as JSX – do so at an FBO leasehold.   Rondinella Decl. at ¶ 13.  Between June 2018

24  and September 2020, ACI Jet was willing to meet the needs of JSX, but ACI Jet has since

25  decided it no longer wishes to do so. That is ACI Jet's prerogative and the County cannot

26  force ACI Jet to change it or to accept JSX as a tenant. Those are simply business

27  realities, not Constitutional violations. The County has offered to find a place at the

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …

1  airport for JSX, but only if JSX agrees to attach its operations to the standard SIDA

2  facilities and protocols.  JSX, however, has refused this offer.

3  **B.  Plaintiffs Have Not Demonstrated that a Temporary Restraining Order is**

4  **Necessary to Prevent Irreparable Harm**

5  Because Plaintiffs have not shown that they are likely to prevail on the merits, it is

6  unnecessary for the Court to consider the other requirements for issuance of a temporary

7  restraining order.  *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). However, it is

8  clear Plaintiffs have not satisfied the remaining elements for a TRO.

9  Significantly, Plaintiffs have not demonstrated that they will suffer irreparable

10  harm in the absence of a temporary restraining order.  First, as discussed above, JSX has

11  not demonstrated and cannot demonstrate a violation of federal or constitutional law.

12  Therefore, the argument that a constitutional violation is *per se* irreparable harm must

13  fail.  Second, Plaintiffs allege that there is no adequate legal remedy for the harm they

14  will suffer.  However, JSX can operate at JWA just as any other airline in the Terminal.

15  It is not being denied "access" as it alleges.

16  Finally, any argument that Plaintiffs will suffer damage to their goodwill,

17  relationships, and reputation if they are forced to cancel flights is entirely without merit

18  because they have taken absolutely no steps to mitigate their damages.  Self-inflicted

19  harm does not qualify as irreparable harm. *Caplan v. Fulheimer Eichen Braverman &*

20  *Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995); *Salt Lake Tribune Publishing Co., LLC v.*

21  *AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

22  Instead, although Plaintiffs have had no sublease in place beyond January 1, 2021,

23  and though Plaintiffs have been aware of ACI Jet's lease provision since, at least,

24  September 11, 2020, when the September 15, 2020, Board Meeting Agenda was publicly

25  posted, Plaintiffs have continued to sell tickets on their website for routes to and from

26  JWA on and after January 1, 2021.  On September 15, 2020, Plaintiffs were clearly on

27  notice that the Board, in a public meeting, which JSX executives attended and spoke at,

28  approved the FBO leases containing the lease provision, but for at least the last three

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-15-

months they have brazenly continued to advertise routes to and from JWA and continue to sell tickets to their customers for flights on and after January 1, 2021.  Respectfully, Plaintiffs should have mitigated their damages by discontinuing the sale of tickets into 2021 when they became aware that the Board had approved leases with a restriction on their type of operation.

Moreover, JSX could have, as early as September, sought a remedy through FAA, which JSX admits in its Complaint is an avenue they are required to pursue.  ECF 1: Compl. at ¶ 47 fn. 7.   JSX had an avenue to obtain a remedy as early as September 2020, it chose instead to file a federal lawsuit and plead around pursuing an administrative remedy with the FAA.  Again, JSX chose to prolong the self-inflicted harm.

Lastly, any harm that JSX may suffer is not at the hands of the County.  Rather, it is their current landlord, ACI Jet, who agreed to enter a new 35-year lease with the County containing the lease restriction.  This was ACI Jet's business decision and they willingly entered their new lease commencing January 1, 2021. JWA was simply responding to the information contained in the proposals of the FBOs selected for lease negotiation when it included this provision in the leases.  While JSX would like this Court to believe that it is the County evicting them from JWA, it is the FBO.  JSX is not being denied access to JWA.  Rather, they are now being offered an opportunity to operate on the same terms and conditions as every other commercial carrier operating out of JWA.

Nor does JSX does have a legally protected "right" to operate out of an FBO. When JSX was given authorization to operate out of ACI Jet, beginning in 2018, this decision was understood and acknowledged to be discretionary and could be withdrawn at any time.  In fact, the JSX annual allocation was only ever provided on an annual "Plan Year" basis.  This means that JSX has been required to obtain Board approval each "Plan Year" relating to where it conducts its operations. JSX currently operates under a Commuter Airline Operating License that expired on December 31, 2018 and has been operating in a month-to-month holdover status since that date.  The License allows for

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  termination for convenience, without cause, upon 30 days written notice.  In accordance

2  with the Phase 2 Access Plan, the Board and Airport Director exercised their discretion in

3  2018 and allowed the JSX operations out of an FBO.  JSX was given a temporary

4  privilege, awarded on a discretionary basis.  JSX was not given a protected legal right to

5  operate out of an FBO at JWA indefinitely.

6      Contrary to the unsupported allegations and inadmissible hearsay in JSX's moving

7  papers, the County made no "assurances" to JSX that something would change after

8  September 15, 2020.  Rather, JWA and the County listened to JSX's concerns and

9  proposals and fully considered them.  JWA has repeatedly offered JSX access through the

10  Terminal along with the other airlines.

11      **C. Equities Do Not Favor Plaintiffs and an Injunction is Not in the Public**
        **Interest**

12

13      Nor can JSX show that the balance of equities favors them or that an injunction is

14  in the public interest. JSX asserts that without the temporary restraining order, they will

15  face financial destruction.  They allege that their customers will suffer a loss of access to

16  JWA and the non-SIDA locations at various cities it serves.  JSX has only itself to

17  blame.  The "right" at issue in Plaintiff's Application is not their right to access at JWA.

18  Contrary to their allegations, they have access.  Rather, what Plaintiffs ask this Court is

19  to effectively grant them an exclusive right (prohibited under FAA grant assurances) to

20  be the sole commercial carrier operating out of an FBO – and that the County command

21  an FBO to host them.  This is not within the County's control nor is it a legally

22  compelled outcome.

23      The Constitution does not recognize, nor have JSX provided any authority for, a

24  right to operate wherever JSX pleases, yet Plaintiffs ask this Court to recognize such a

25  right.  It is that purported "right" that this Court must balance against (1) the County's

26  compelling interest in ensuring that FBO leases are consistent with the proposals

27  submitted by the FBOs, and (2) the County's obligations under FAA Grant Assurances

28

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …

which prohibit the granting of "exclusive rights" or preferential treatment to an airport user.

### D. The Bond Requirement Should Not Be Waived

Federal Rule of Civil Procedure 65, subdivision (c), provides:

> Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

The Ninth Circuit has emphasized that "each case is fact-specific" and where "a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (affirming imposition of $50,000 bond against environmental organization); *see also Habitat Educ. Ctr. v. U.S. Forest Serv.,* 607 F.3d 453, 459-60 (7th Cir. 2010) (the Seventh Circuit rejecting both the proposed exemption of nonprofit entities from the bond requirement and, in the alternative, a proposal that would allow courts to exempt entities based on their likely contribution "to the overall public welfare").

Here, Plaintiffs offer absolutely no information as to financial capability to post a bond. They simply state that a bond is neither appropriate nor necessary in this case. If the Court were even to entertain the notion of issuing a TRO or preliminary injunction, at the very least, Plaintiffs should be required to fully inform the Court with documentation as to its financial capability to post a bond.

## VI.   CONCLUSION

JSX's ire is entirely misdirected.  The provision in the FBO lease that offends JSX reflects the business decision of ACI Jet, not a "Restriction" or regulation imposed by the County in violation of ANCA, the ADA, or the Fourteenth Amendment.  JSX knows it cannot force an FBO to sublease to them, so it has framed the County's actions as an unlawful conspiracy to evict an airport user.  The evidence demonstrates this is simply not the case, and as an airport sponsor, the County is prohibited from providing JSX with

-18-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

preferential treatment.  The County respectfully requests that the *Ex Parte* Application for a Temporary Restraining Order ("TRO") be denied.

Respectfully submitted,

LEON J. PAGE, COUNTY COUNSEL
NICOLE M. WALSH, SENIOR ASSISTANT
CAROLYN M. KHOUZAM, DEPUTY

DATED:  December 17, 2020      By: _____/S/_____
                                   Nicole M. Walsh, Senior Assistant

Attorneys for Defendants
BARRY RONDINELLA, in his official capacity as
Airport Director of John Wayne Airport; and
COUNTY OF ORANGE, CALIFORNIA

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE …