BRIDGFORD, GLEASON & ARTINIAN
Richard K. Bridgford (CA SBN 119554)
Richard.Bridgford@Bridgfordlaw.com
Michael H. Artinian (CA SBN 203443)
Mike.Artinian@Bridgfordlaw.com
26 Corporate Plaza, Suite 250
Newport Beach, CA 92660
Telephone:  (949) 831-6611
Facsimile:   (949) 831-6622

COOLEY LLP
William V. O'Connor (CA SBN 216650)
woconnor@cooley.com
4401 Eastgate Mall
San Diego, CA  92121-1909
Telephone:  (858) 550-6000
Facsimile:  (858) 550-6420

COOLEY LLP
J. Parker Erkmann (*Pro hac vice* to be filed)
perkmann@cooley.com
1299 Pennsylvania Avenue, NW, Ste 700
Washington, DC 20004-2400
Telephone:  (202) 776-2036
Facsimile:   (202) 842-7899

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DELUX PUBLIC CHARTER, LLC d/b/a JSX AIR and JETSUITEX, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ORANGE, CALIFORNIA, a municipality; BARRY RONDINELLA, Airport Director of John Wayne Airport,<br><br>Defendants. | Case No. 8:20-CV-2344-JLS-KESx<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**<br><br>Dept.: 10A<br>Judge: Honorable Josephine L. Staton |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**MPA ISO APPLICATION FOR TRO**

Defendants misrepresent to the Court that ACI Jet (the FBO owner), not the County, instigated the Restriction. Undisputed evidence demonstrates Defendants' falsity: (i) Mr. William Borgsmiller, in yet a third declaration, makes clear that the County forced the "non-negotiable" Restriction on ACI Jet; (ii) Mr. Alex Wilcox, in a second declaration, demonstrates that the County instigated the Restriction; (iii) an Orange County Board Member publicly stated that the County wanted JSX in the SIDA terminal; (iv) a County Staff Report confirms that the County (and not ACI Jet) instigated the Restriction; and (v) JSX's unanswered September 14, 2020, letter to the County that confirms the County was the instigator of the Restriction. Beyond hiding behind ACI Jet, Defendants also claim that JSX can operate out of the SIDA terminal like "other airlines" and that Defendants risk granting an impermissible "exclusive right" if they permitted JSX to continue operating at ACI Jet.

The evidence shows that once Defendants' falsity that ACI Jet was the instigator rather than Defendants is exposed, Defendants have no response to Plaintiffs' claims. Defendants admit that they cannot implement (or allow) a wholesale ban on JSX's "routes" or "services." 49 U.S.C. § 41713(b)(1). Defendants do not dispute that they (1) failed to comply with ANCA when adopting the Restriction; (2) failed to offer JSX an accommodation that permits it to offer its "routes" and "services"; and (3) discriminated against JSX—the only impacted carrier—with the Restriction. Defendants also concede that the Restriction, coupled with Defendants' refusal to provide JSX a non-SIDA site, eliminates Plaintiffs' "type of operation" at JWA. (Opp. at 16.) Based on this admission, the Court should issue a temporary restraining order and preliminary injunction that enjoins the Restriction and permits JSX to continue to operate at ACI Jet's non-SIDA FBO.[1]

### A.   ACI Jet Wants To Continue Partnering With JSX

In an attempt to deflect attention from their unlawful conduct, Defendants have

---

[1] As to the Martin Aviation "proposal"—itself an "exclusive rights" violation—this is the first time the County ever mentioned that it may consent to this possible accommodation and, in any event, JSX needs time to analyze the "proposal."

1  manufactured an argument that it was ACI Jet's "business decision" to stop providing
2  service to JSX after December 31, 2020. (*E.g.*, Opp. at 1.) This argument misstates
3  the facts and ignores federal law. Defendants' unsupportable position also provides
4  this Court with a simple way to resolve this dispute.

*First*, the record is clear that ACI Jet will gladly continue to serve JSX and its customers if the County lets it. (Borgsmiller III, ¶¶ 3, 5; Borgsmiller I, ¶ 14.) ACI Jet asked to continue providing these services when bidding for a new lease *and* it expressly told Rondinella that it wanted to provide at least a two-year "transition" time for JSX. (Borgsmiller III, ¶¶ 2, 3; Borgsmiller I, ¶¶ 11, 14.) ACI Jet has told both Plaintiffs *and Defendants* that it would accommodate JSX's operations if permitted to do so by the County. (Wilcox II, ¶ 4, Ex. A). Defendants have now fabricated ACI Jet's "business decision." Regardless, the *status quo ante* can be maintained during the pandemic by honoring ACI Jet's actual "business decision."

*Second*, undisputed publicly available evidence shows that the County (not ACI Jet) mandated the Restriction. Neither the current lease, nor the original sample lease provided to ACI Jet during the RFP process, contained such a provision. In ACI Jet's initial response to the County's RFP, it said "yes" when asked if it planned to host JSX.[2] (Rondinella, Ex. C-3.) Only after ACI Jet learned that it would not be granted a new lease **unless it checked "no"**—Defendants were clear that hosting JSX was "non-negotiable"—did ACI Jet change its response to "no" on the form. (Borgsmiller I, ¶¶ 10-12.) Simply put, ACI Jet "agreed" to the County's Restriction because it was forced to (coerced) by Defendants. (*Id.* ¶ 12.)

*Third*, the County's original stated basis for including the Restriction—shown on a public filing that was prepared by the same County Counsel who filed Defendants' Opposition—makes no mention of ACI Jet's "business decision." Instead, the County provided three reasons for imposing the Restriction: (1)

---

[2] JSX is the only "Regularly Scheduled Commercial Carrier" operating from an FBO and thus this RFP question was specifically inquiring about JSX.

"declared County policy on general aviation use at JWA"; (2) "safe and efficient operation of JWA"; and (3) "JWA passenger service goals of the County." (Wilcox II, ¶ 11, Ex. B.) Moreover, despite Defendants being well aware that approving the Leases as amended would eliminate JSX from JWA, it mandated the Restriction anyway. (*Id.* ¶ 17, Ex. C.)

*Fourth*, there is no reason for the County to codify a private party's "business decision" in the Lease. Defendants fail to explain why ACI Jet's "business decision"—as opposed to any other private party's business decision—caused the County to "revise[] the lease terms" and mandate the Restriction. (Opp. at 5.) And even if the County, for whatever reason, felt compelled to codify ACI Jet's "business decision" in ACI Jet's lease, there is no basis, or explanation, for including the Restriction in two other FBO Leases.

*Fifth*, Supervisor Doug Chaffee's comments at the September 15, 2020, Board Meeting demonstrate Defendants' true purpose and improper invasion into the federally preempted field of air carriers and air transportation. Supervisor Chaffee confirmed that the County *required* the Restriction and that JSX "belongs" at the main terminal due to his (uninformed) concerns about passenger screening. (Wilcox II, ¶ 14.) Supervisor Chaffee stated that his "concerns" would only be addressed if JSX was forced into the SIDA terminal. (*Id.*)

*Finally*, assuming *arguendo* Defendants' argument is factually accurate—which it is not—federal law requires the County, as sponsor of JWA, to "preserve its rights and powers to operate the airport in compliance with its federal obligations."[3] (FAA Order 5190.6b, ¶ 6.3(b).) The County must ensure that it and all its tenants comply with its federal obligation to provide access to JSX on reasonable and non-discriminatory terms. Here, this means that the County is prohibited from eliminating (or being complicit in the elimination of) JSX's services.

---

[3] Defendants' argument that "an FBO tenant can grant [an exclusive] right" is thus misplaced. (Opp. at 2.)

In sum, ACI Jet's unequivocal statement that it wants to continue to partner with JSX in 2021 and beyond should resolve the matter. Moreover, the fact that the County, not ACI Jet, instigated the Restriction undermines Defendants' entire Opposition, including their suggestion that the cases Plaintiffs rely upon are distinguishable. (Opp. at 12-13.) Defendants' conduct is illegal, null, and void.

### B. Defendants Cannot Make JSX Operate At SIDA Locations

Defendants claim that they have not violated federal law because they have offered JSX the ability to operate in the SIDA terminal. (Opp. at 15.) But Defendants admit that the County is required to "make the airport available . . . on reasonable terms and without unjust discrimination to all types, kinds, and classes of Aeronautical activities, including commercial aeronautical activities." (Opp. at 6.) And the ADA "stops" Defendants "from imposing their own substantive standards with respect to rates, routes, or services." *Am. Airlines v. Wolens*, 513 U.S. 219, 232 (1995). A sponsor's conduct is invalid if it "binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry." *See Air Transport Ass'n of Am. v. City & Cnty. of S.F.*, 266 F.3d 1064, 1072 (9th Cir. 2001). Simply put, it is uncontested that the ADA prohibits Defendants from affecting JSX's ability to decide the "scheduling of transportation [or] the selection of markets to or from which transportation is provided." *See Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265-66 (9th Cir. 1998) (en banc). That is precisely what will happen absent maintenance of the *status quo ante*.

Unlike airlines, JSX operates a type of air carrier service pursuant to a different regulatory regime designed to enable convenient, safe, and reliable air service to underserved markets. *See* 14 C.F.R. § 380. Defendants admit that Plaintiffs' operation is lawful, safe, and quiet. (Opp. at 10.) But they persist in treating JSX as if it were an airline.[4] That is precisely the problem with Defendants' argument. By

---

[4] Defendants' continued attempt to try to treat JSX like Southwest or Allegiant is misplaced and must be rejected. (*E.g.*, Opp. at 1 "JSX simply objects to being treated

trying to force JSX into the SIDA terminal, Defendants are necessarily foreclosing JSX's ability to provide "routes" and "services" to any airport that does not have a SIDA location. *See id*. This is not hypothetical: JSX provides routes and services to JWA from underserved airports, such as Concord and Napa, that do not have SIDA locations. (Wilcox I, ¶ 27.) If Defendants are permitted to force JSX into the SIDA terminal, it will prohibit JSX from "mak[ing its] own decisions about where to fly and how many resources to devote to each route and service." *Cnty. of S.F.*, 266 F.3d at 1074. Defendants' conduct is therefore preempted by the ADA. *Id*. Defendants do not address, much less dispute, any of these prohibitions in their Opposition.

### C. The Restriction Created An "Exclusive Right" Violation

Federal law prohibits Defendants from providing an "exclusive right" to any airport user. 49 U.S.C. § 47107(a)(4). This means that Defendants "may not grant a special privilege or a monopoly to anyone providing aeronautical services on the airport or engaging in an aeronautical use." (FAA Order 5190.6b, § 8.1.) The "intent of this restriction is to promote aeronautical activity and protect fair competition at federally obligated airports." (*Id*.) By trying to force JSX into the terminal, Defendants are *restricting* both aeronautical activity and fair competition at JWA.

Moreover, an "exclusive right" violation occurs when a sponsor "exclude[s] or debar[s] another from enjoying or exercising a like power, privilege or right." (*Id*.) Defendants did not dispute that a materially identical operator to Plaintiffs—an air carrier certificated under the same Part 135 and Part 380 regulatory framework, using the same aircraft, and providing the same route and service—can operate at ACI Jet in 2021 during the entirety of its lease. It is only JSX who is prohibited. The Restriction, coupled with Defendants' refusal to provide JSX a non-SIDA location, is itself an "exclusive rights" violation: JSX is being "excluded" and "debarred" from providing commuter service at JWA.

---

the same way as all other commercial carriers at JWA.") If JSX were an airline, it would not be seeking non-SIDA accommodations pursuant to federal law.

| | | |
|---|---|---|
| 1 | Dated: December 18, 2020 | Respectfully submitted, |

By:/s/ William V. O'Connor
    William V. O'Connor

Attorneys for Plaintiffs Delux Public Charter, LLC d/b/a JSX Air and JetSuiteX, Inc.

BRIDGFORD, GLEASON & ARTINIAN
Richard K. Bridgford (CA SBN 119554)
Richard.Bridgford@Bridgfordlaw.com
Michael H. Artinian (CA SBN 203443)
Mike.Artinian@Bridgfordlaw.com
26 Corporate Plaza, Suite 250
Newport Beach, CA 92660
Telephone:   (949) 831-6611
Facsimile:   (949) 831-6622

COOLEY LLP
William V. O'Connor (CA SBN 216650)
woconnor@cooley.com
4401 Eastgate Mall
San Diego, CA  92121-1909
Telephone:  (858) 550-6000
Facsimile:  (858) 550-6420

COOLEY LLP
J. Parker Erkmann (*Pro hac vice* to be filed)
perkmann@cooley.com
1299 Pennsylvania Avenue, NW, Ste. 700
Washington, DC 20004-2400
Telephone:   (202) 776-2036
Facsimile:   (202) 842-7899

*Attorneys for Plaintiffs*