**Exhibit C**

DECLARATION OF ALEX WILCOX IN SUPPORT OF PLAINTIFFS' REPLY BRIEF IN SUPPORT OF OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE



J. Parker Erkmann  
+1 202 415 3435  
perkmann@cooley.com

Via Email

September 14, 2020

Chairwoman Michelle Steel  
Michelle.Steel@ocgov.com  
Orange County Board of Supervisors  
333 W. Santa Ana Blvd., 10 Civic Center Plaza  
Santa Ana, CA  92701

**Re:  Prohibition of JSX Air Operations at John Wayne Airport (JWA)**

Dear Chairwoman Steel:

      I write on behalf of Delux Public Charter (d/b/a JSX Air).  At its September 15, 2020 meeting, the Board of Supervisors will consider approval of leases between the County of Orange (the County) and fixed base operators (FBO) Aviation Consultants, Inc. (ACI Jet) and Clay Lacy Aviation, Inc.  Today, pursuant to a contractual agreement, JSX Air operates its semi-private passenger jet service from the ACI Jet facility.  Since 2018, JSX Air has safely flown tens of thousands of customers connecting JWA to Las Vegas, Oakland, Phoenix, Mammoth Lakes and Palm Springs and with charters to Sun Valley; Bloomington, Indiana; Seattle; Alaska and beyond.  In their proposed form, the leases prohibit the operations of JSX Air as of January 1, 2021 and thus will deprive thousands of Orange County residents and visitors of their preferred provider of passenger air transportation.  This result is unfortunate, intentional and unlawful.  On September 11, 2020, Airport Director Barry Rondinella spoke with JSX Air Chief Executive Officer Alex Wilcox.  Mr. Rondinella advised Mr. Wilcox that the lease terms were both required by JWA and intended to prohibit JSX Air from operating there.

      Prohibiting JSX Air's operations at JWA does not serve the residents of Orange County.  JSX Air operates jets with 30 comfortable seats that depart from the ACI Jet FBO facilities.  Customers need to arrive only 20 minutes before departure, which is ideal for short haul trips.  Its consumer friendly service has made JSX Air the highest rated air carrier in North America, and the attractiveness of the service has only grown during the pandemic.  With more space between seats and a low hassle airport experience, thousands of customers have told JSX Air that it is the only carrier they will fly before there is a vaccine.  Indeed, more than 5,500 have reached out to the County to voice their opposition to the proposed lease terms.

      The County's decision will impact not only passengers, but also the residents of the County that are affected by noise stemming from jet operations at JWA.  JSX Air operates the quietest commercial aircraft serving JWA, and JSX Air has worked with JWA and the Federal Aviation Administration (FAA) to implement flight procedures that minimize the negative impacts of noise on the community.  A 2019 noise study at JWA empirically demonstrated that a single Boeing 737-800 produces the same amount of noise

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400  
t: (202) 842-7800  f: (202) 842-7899  cooley.com

Exhibit C, Page 000023



September 14, 2020
Page Two

as *thirty-eight* JSX Air overflights.[1]  Any airline utilizing the capacity currently allocated to JSX under the JWA Access Plan will result in substantially *more* aircraft noise.

Forcing JSX Air out of JWA will have adverse economic impacts as well.  Currently, JSX Air's operation at JWA directly employs 52 crew, maintenance and ramp workers, customer service personnel and administrative staff that support its JWA operation – most of whom live and work in the County. Hundreds of additional jobs are supported indirectly.  JWA is one of JSX Air's largest markets.  JSX Air has paid over $4.2 million to operate at JWA, including PFCs, landing fees, RON Parking, handling and ramp fees.  JSX Air estimates that the local economic impact of its flight operations is $25 million annually.  All of that will be lost if the County approves the proposed leases in their current form.  In a pandemic that has drastically reduced demand for air travel, it makes no sense to force out a reliable contributor to the economic vitality of the County.

In addition to the policy reasons for rejecting the proposed leases in their current form, the proposed action violates federal law and established FAA procedures.  As a recipient of funds under the FAA's Airport Improvement Program, the County (as sponsor of JWA) undertakes a number of legal obligations set forth in federal "grant assurances."  Most relevant here, the County is federally required to commit to "economic non-discrimination" and specifically "make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport."[2]  Because the leases prohibit the FBOs from permitting the type of service offered by JSX Air, they violate this fundamental obligation of the County.[3]

The proposed leases prohibit JSX Air's operations at JWA (which is the precise intended effect of the following proposed term).  Specifically, the proposed FBO leases do not allow the operations of "Regularly Scheduled Commercial Operators" as defined in the Access Plan:

> LESSEE agrees not to use the Leased Premises for any unauthorized commercial airline aviation purposes or to engage in or permit any activity not enumerated by this section within or from the Leased Premises.  <u>Additionally, LESSEE shall not permit the operation of a Regularly Scheduled Commercial User as defined in section 2.40 of John Wayne</u>

---

[1] Investigative Science & Engineering, Inc., Acoustical Compliance Monitoring & Validation Testing JSX Airlines Overflight Activities – Newport Beach, CA ISE Project #19-012 (Nov. 13, 2019), at 12.

[2] FAA, Airport Improvement Program Grant Assurances (Feb. 2020), https://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip-2020.pdf, at Grant Assurance 22(a) (page 10) (hereinafter "Grant Assurances").  The Grant Assurances implement the requirements of 49 United States Code § 47107(a) (1) - (6).

[3] The prohibition of JSX Air's service and the associated loss of rent and fees JSX Air pays to JWA also violates the County's obligation under Grant Assurance 24 to "maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances…." Grant Assurance 24 (page 11).

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

Exhibit C, Page 000024



September 14, 2020
Page Three

>Airport's Phase 2 Commercial Airline Access Plan and Regulation, as may be amended from time to time.[4]

This provision intentionally singles out JSX Air.  Unlike the major scheduled air carriers such as Southwest Airlines that operate large aircraft, JSX Air operates small aircraft and offers a different type of service that the FAA classifies as "on-demand" services.[5]  Accordingly, under applicable Transportation Security Administration (TSA) regulations and its security plan, JSX Air can operate (and has for several years incident free, at every one of its airports) from non-Security Identification Display Area (SIDA) (or non-sterile) portions of JWA (or any other airport) such as the ACI Jet FBO.  This capability is fundamental to JSX Air's business model and is the key component of the "crowd free" experience that sets JSX Air apart from the traditional air carriers, ever more so during this pandemic when first responders, immunocompromised and other vulnerable populations need essential travel.  JSX has adopted and implemented security protocols that exceed TSA standards, and it screens and boards customers much more rapidly than the larger airlines who are required to operate from the SIDA portions of the terminal.  And JSX Air cannot operate from the SIDA portions of the JWA main terminal and maintain the rapid service that defines its operation.  Indeed, because JSX Air operates from non-SIDA portions of all the other airports throughout its network, it could not lawfully arrive and deplane passengers into the SIDA portions of JWA or any other airport.  Accordingly, adoption of the restrictions in the proposed leases is an extinction-level event for JSX Air at JWA.

JWA officials have intentionally targeted JSX Air's operations for elimination.  JSX Air has been advised that JWA officials demanded that the restrictive language be included in the approved leases and that the purpose of the language was to prohibit JSX Air from operating at the FBOs.  In their September 11 conversation, Mr. Wilcox advised Mr. Rondinella that the proposed lease terms would force JSX Air out of the ACI Jet facility and asked that JSX Air be accommodated at another location at the airport.  Mr. Rondinella advised Mr. Wilcox that JSX Air could operate only from the SIDA portions of the terminal.  This offer was made with knowledge that JSX Air's type of operation would prohibit any such move.  As JSX Air has previously proposed to JWA, Mr. Wilcox requested that JWA convert an under-utilized portion of the terminal or terminal ramp and parking area into a non-SIDA area to accommodate JSX Air's operation.  This request was flatly denied.

The County's decision to prohibit a type of aeronautical operation at the airport both violates the obligation to provide nondiscriminatory access to a public use airport and is procedurally deficient.  As noted above, as a condition of receiving funds from the FAA's Airport Improvement Program, the County (as sponsor of JWA) must make the airport available without unjust discrimination to all types, kinds and classes

---

[4] Orange County Board of Supervisors, Agenda Revisions and Supplementals (Sep. 15, 2020), Attach A at 24, Attach. & B at 24 (https://board.ocgov.com/sites/bos.egovoc.com/files/2020-09/rev-sup09152020.pdf) (emphasis added).  Under the Access Plan, a "*Regularly Scheduled Commercial User* means any person conducting aircraft operations at *JWA* for the purpose of carrying passengers, freight, or cargo where such operations: (i) are operated in support of, advertised, or otherwise made available to members of the public by any means for commercial air transportation purposes, and members of the public may travel or ship *Commercial Cargo* on the flights; (ii) the flights are scheduled to occur, or are represented as occurring (or available) at specified times and days; and (iii) the person conducts, or proposes to operate, departures at *JWA* at a frequency greater than two (2) times per week during any consecutive three (3) week period." Access Plan § 2.40.

[5] 14 C.F.R. Part 110.2 (defining "on demand" operations).

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com



September 14, 2020
Page Four

of aeronautical activities.  The FAA provides for a limited exception to this rule:  "the airport sponsor may prohibit or limit any given type, kind, or class of aeronautical use of the airport if such action is reasonable and necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public."[6]  That said, the FAA is unequivocal that "[a]ny restriction proposed by an airport sponsor based upon safety and efficiency, including those proposed under Grant Assurance 22(i), must be adequately justified and supported."[7]  As a threshold matter, the County has not articulated any rationale for prohibiting JSX Air's type of operations.  The restrictive terms in the FBO leases are procedurally invalid on their face.

To the extent the County has any rationale for prohibiting JSX Air's operations, it must be based on notions of safety and efficiency.  The County has not articulated any such rationale seemingly because JSX Air has operated with an impeccable safety record since its inception, including since starting service to JWA in 2018.  There is no dispute that JSX Air is safe.  But importantly, the County has ignored altogether the requirement to seek the FAA's determination that the proposed limitation is justified:

> The Associate Administrator for Airports, working in conjunction with Flight Standards and/or the Air Traffic Organization, will carefully analyze supporting data and documentation and make the final call on whether a particular activity can be conducted safely and efficiently at an airport.  In all cases, the FAA is the final arbiter regarding aviation safety and will make the determination regarding the reasonableness of the sponsor's proposed measures that restrict, limit, or deny access to the airport.  ***The FAA, not the sponsor, is the authority to approve or disapprove aeronautical restrictions based on safety and/or efficiency at federally obligated airports.***[8]

JSX Air respectfully submits that approving the proposed leases is not only unwise, but also contrary to the County's obligations as an airport sponsor under federal law both substantively and procedurally.

If the County moves forward with the proposed action, JSX Air will explore all available legal remedies.  Given the County's prohibition of a type of aeronautical activity, JSX Air will file a complaint under Part 16 of the Federal Aviation Regulations requesting, among other things, that the FAA investigate JWA's conduct and compliance with its obligations under the Airport Improvement Program and seeking a determination that the restrictive terms of the leases violate the grant assurances and other applicable law.

JSX Air also will explore private remedies.  JSX Air has spent years and invested millions of dollars developing a business at JWA (at the ACI Jet facility specifically) that was thriving prior to the pandemic.  And it has worked hard to preserve that business and serve the community during these difficult times.  JSX Air will not quietly walk away from the business it has worked so hard to build.  Accordingly, the County's forcing JSX Air from JWA without justification constitutes tortious interference with JSX Air's longstanding contract and relationship with ACI Jet and the resulting business opportunities.  The County's defiance of its obligations under federal law and with full knowledge of the harm it is causing JSX Air substantiate the claim.  Further, JWA's intentional act to interfere with JSX Air's reasonable investment-backed expectations in developing its operations at the ACI Jet FBO facility and JWA more generally suggests a regulatory

---

[6] Grant Assurance 22(i)

[7] FAA Airport Compliance Manual, FAA Order 5190.6B (Sep. 30, 2009), Part 4 Ch. 14.3.

[8] *See id. (*emphasis in original).

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

Exhibit C, Page 000026



September 14, 2020
Page Five

taking for which JSX Air would be due compensation.  JSX Air submits this letter without prejudice, and hereby reserves all of its rights and remedies.

      JSX Air prefers not to go down any of these paths.  JSX Air respectfully submits that the County must adhere to its legal obligations. Thus, the County must modify the proposed terms of the FBO leases to allow JSX Air's to operate its full allocation of Commuter Passenger Capacity under the Access Plan from non-SIDA portions of JWA.  For 2021, JSX Air requested a Passenger Capacity allocation of 95,070 annual passengers and looks forward to delivering its customer-friendly service to that many customers from the FBO in the coming year.

      At a minimum, the County should defer action on the FBO leases so that JSX Air and the thousands of County residences that support its service at JWA can be fully heard and considered by the County.

                                            Sincerely,

                                            J. Parker Erkmann
                                            Counsel for JSX Air

CC:     Vice Chairman Andrew Do (Andrew.Do@ocgov.com)
           Honorable Donald P. Wagner (Donald.Wagner@ocgov.com)
           Honorable Doug Chaffee (Fourth.District@ocgov.com)
           Honorable Lisa Bartlett (Lisa.Bartlett@ocgov.com)
           Frank Kim, County Executive Officer (Frank.Kim@ocgov.com)
           Barry Rondinella, JWA Airport Director (BRondinella@ocair.com)
           Alex Wilcox, Chief Executive Officer, JSX Air (alex.wilcox@jsx.com)

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

Exhibit C, Page 000027