# Exhibit B



U.S. Department
of Transportation
**Federal Aviation
Administration**

Western-Pacific Region
Airports Division

P. O. Box 92007
Los Angeles, CA 90009-2007

April 28, 2016

Rosemary A. Vassiliadis
Director of Aviation
McCarran International Airport
P.O. Box 11005
Las Vegas, NV 89111-1005

Shawn Simpson
Chief Executive Officer
Boutique Air
548 Market Street, Suite #73298
San Francisco, CA 94104

Dear Ms. Vassiliadis and Mr. Simpson:

**Boutique Air
McCarran International Airport (LAS)
Part 13 Informal Determination**

We are informing Boutique Air and the Clark County Department of Aviation (County) of the results of an inquiry conducted by the Airports Division, Western-Pacific Region, in accordance with Title 14 Code of Federal Regulations Section 13.1, *Reports of Violation*.

**Scope of the Investigation**
When airport sponsors accept airport financial assistance, they agree to abide by certain contractual obligations, called Grant Assurances. These obligations require the recipients to maintain and operate their facilities in accordance with specific conditions contained in the Grant Agreements. The Federal Aviation Administration (FAA) endeavors to ensure airport owners comply with their federal obligations via a Compliance Program. The Compliance Program is intended to achieve voluntary compliance with federal obligations by eliminating episodes of non-compliance.

In addressing allegations of noncompliance, the FAA will make a preliminary informal determination as to whether or not an airport sponsor is currently in compliance with the applicable Grant Assurances before taking a formal Agency action to obtain compliance.

**Circumstances of the Investigation**
Mr. Shawn Simpson, Chief Executive Officer of Boutique Air, submitted a report to the FAA Administrator on November 6, 2015. The report was assigned to the Office of Airports for follow up and investigation by the Airports Division, Western-Pacific Region. Mr. Simpson subsequently described the nature of his dissatisfaction with the County in written and verbal communications with the Airports Division, Western-Pacific Region. Mr. Simpson alleged the County was not compliant with Grant Assurance 22, *Economic Nondiscrimination*, at LAS. Grant Assurance 22, *Economic Nondiscrimination*, stipulates, in part, that airport sponsors will make their airports available for aeronautical activities, such as commercial air carriers, on reasonable terms and without unjust discrimination.

Boutique Air provides Essential Air Service (EAS) using eight passenger aircraft at LAS to destinations in Arizona, California and Nevada. Mr. Simpson claimed the County rates and charges at LAS were too costly and airport rules were too restrictive for a small air carrier. Boutique Air believed that the Grant Assurance required the County rates and charges be reduced and airport policies modified to accommodate Boutique Air's specific needs. In some situations, Boutique Air wished to operate in a sterile area subject to Transportation Security Agency (TSA) rules. At other times, Boutique Air preferred to be free from TSA security rules. As Boutique Air sought to satisfy its operating preferences, it sometimes sought arrangements outside the LAS passenger terminals with a Fixed Base Operator (FBO) or hangar operator.

It was explained to Mr. Simpson that the FAA does not formulate or administer an airport's rate setting methodology. Rather, the FAA can evaluate rates and charges to make a determination whether or not they are reasonable and/or unjustly discriminatory based on airport specific circumstances. Additionally, it was explained to Mr. Simpson that airport sponsors are allowed to develop and enforce minimum standards and rules and regulations for the safe, efficient, and orderly operation of their airports. In the case of large hub airports, such as LAS, sponsors may stipulate that air carriers must operate from the passenger terminal(s) and may not operate from other facilities, such as FBOs. The FAA does not view such rules as unreasonable, especially in view of the investment made in airport terminal facilities.

In general, Mr. Simpson disclosed that it was his belief, based on his negotiations with County officials, that airport policies were too restrictive and airport rates too high. In combination, they were unfair to Boutique Air and presented a barrier to reasonable airport access.

In response to Boutique Air's request to operate at LAS, the County offered the following: (i) a sterile operation in an airport passenger terminal utilizing one of the common use gates; (ii) an off-gate location in a non-sterile area that would require transportation of passengers to and from the aircraft through the non-sterile areas of the airport; (iii) an operation at one of the County's general aviation airports, either Henderson Executive (HND) or North Las Vegas (VGT) airports; and (iv) an opportunity to request that the LAS Airline-Airport Affairs Committee (AAAC) agree to a reduced rate for small air carriers.

The County provided information describing the airport rates and charges, permitting standards, and operating requirements. The County explained that rates and charges for commercial airlines were reviewed and approved by the AAAC and the Clark County Board of Commissioners. Once approved, the rate schedule is published in the Clark County Code. The County reported that it informed Boutique Air that it could solicit the AAAC for consideration of a different rate, one that would allow Boutique Air to operate in the passenger terminal at a lower cost. This offer provided an opportunity, although not expeditious, for Boutique Air to obtain a different cost arrangement at LAS. Boutique Air declined this offer as well as the option of utilizing HND or VGT airports.

Boutique Air further objected to airport restrictions that prevented a scheduled air carrier from operating at locations other than the airport terminals, such as the fixed base operators or privately owned hangars. In accordance with Grant Assurance 22.h, the County has the authority to establish reasonable rules that are necessary for the safe, secure, and efficient operation of the airport. Other large air carrier airports have similar restrictions. Furthermore, substantial resources are expended in terminal design and constructions to ensure the safety, security, and comfort of the traveling public. Therefore, such restrictions that control where air carriers operate are not unreasonable.

On February 9, 2016, Boutique Air announced it would cease Las Vegas service on February 15, 2016.

**Concluding Analysis**
In performing our analysis, the Airports Division, Western-Pacific Region considered the applicability of all relevant Federal Grant Assurances. The review focused primarily on compliance with Federal Grants Assurance 22, *Economic Nondiscrimination*, as this assurance was most relevant to the allegations in the report. Assurance 22, in part, requires that an airport sponsor make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

The County defended its rules and rates claiming they were reasonable and not unjustly discriminatory. The County stated their policy has stood the test of time and not been the object of criticism by airport users or complaints to the FAA. The rate setting methodology is considered reasonable, transparent, uniformly applied, and consistently used with all air carriers.

Furthermore, it should be clarified that Grant Assurance 22 stipulates that airport rates and charges should be reasonable. While the assurance requires that rates be fair, it does not mean that they will always be affordable or inexpensive for the universe of users who could possibly seek to operate at an airport. Market conditions and airport operating expenses determine prices. For this reason, the Airports Division, Western-Pacific Region cannot conclude that the LAS rates and charges are unreasonable because they are higher than Boutique Air wishes to pay.

The County required that Boutique Air operate from an airport terminal, subject to the airport's approved rates and charges, while disallowing operations elsewhere at LAS. These requirements, which apply to all air carriers, are considered reasonable. Based on our analysis, these requirements did not unreasonably prevent Boutique Air from operating at LAS.

## Conclusion

The Airports Division, Western-Pacific Region has concluded that Clark County is in compliance with its obligations under the Federal Grant Assurances. As such, this concludes our informal review of the report of violation filed by Mr. Shawn Simpson of Boutique Air against the County.

If there is disagreement with the preliminary conclusion, either party to the dispute may file a formal complaint in accordance with the rules of practice prescribed in Title 14 Code of Federal Regulations Part 16, or for air carrier disputes, in accordance with Title 14 Code of Federal Regulations Part 302.

If you have any questions, please feel free to contact Brian Armstrong, Manager, Safety and Standards Branch, at (310) 725-3620.

Sincerely,

Brian Armstrong
Manager, Safety and Standards Branch
Airports Division, Western-Pacific Region

cc:	Compliance Division, ACO-100
	Phoenix Airports District Office, PHX-ADO